UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
BAIJNATH AGIWAL,

                     Plaintiff,

-against-

HSBC MORTGATE COROPORATION,
UNUM GROUP,

                     Defendants.
----------------------------------------------------------x

**NOT FOR PUBLICATION**
**MEMORANDUM & ORDER**
09-CV-4795 (CBA) (LB)

AMON, United States District Judge:

## INTRODUCTION

Before the Court are two motions to dismiss this pro se employment discrimination lawsuit. Baijnath Agiwal has sued HSBC Mortgage Corporation—his former employer—and Unum Group—which administered HSBC's short-term and family and medical leave programs—alleging that he was terminated, not promoted, subjected to unequal terms and conditions of employment, retaliated against, and that his disability was not accommodated, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e et seq. ("Title VII"); the Age Discrimination in Employment Act, 29 U.S.C. § 621–634 ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. § 12112–12117 ("ADA"). Unum has moved to dismiss Agiwal's claims against it for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). HSBC has moved to dismiss the claims against it because Agiwal has repeatedly failed to comply with his discovery obligations. See Fed. R. Civ. P. 37(b)(2)(A)(v). United States Magistrate Judge Lois Bloom has provided a report and recommendation on HSBC's motion and recommended that the Court grant the motion to dismiss. For the reasons that follow, the Court grants both motions to dismiss.

1

## BACKGROUND

Agiwal, who worked as a mortgage loan officer at HSBC from about May 2006 to October 2007, initiated this lawsuit in October 2009. He filed an amended complaint, which is the currently operative complaint, on November 12, 2009. That complaint, which is a form employment discrimination complaint, asserts claims under Title VII, the ADA, and the ADEA. (Am. Compl. at 1.) In the section of the form complaint that asks plaintiffs to identify the discriminatory conduct about which they are complaining, Agiwal checked as applicable termination of employment, failure to promote, failure to accommodate his disability, unequal terms and conditions of employment, and retaliation. (Id. at 3.) He alleged, again responding to prompts, that the discrimination occurred on account of his race, color, religion, national origin, age, and disability. (Id.) When asked to describe the facts of his case, Agiwal wrote that he was sick, that his sickness was covered by the Family and Medical Leave Act (FMLA), that he reported his sickness, and that he was fired illegally, presumably for not reporting to work. (Id. at 4.) Agiwal also alleged "discrimination at the job at different occasion." (Id.) Agiwal closed the facts section with a promise to "provide more documents in due course." (Id.) Agiwal named as defendants HSBC, Unum, the U.S. Department of Labor ("DOL"), the U.S. Equal Employment Opportunity Commission ("EEOC"), and the New York State Division of Human Rights ("DHR"). (Id. at 2.) Agiwal attached to his amended complaint forty two pages of exhibits, which include correspondence between Agiwal and the EEOC, Unum, and HSBC.

On December 17, 2009, the Court dismissed the claims against the DOL, the EEOC, and the DHR. Agiwal had not alleged that they employed him (or that he applied for employment with them) and had not identified them as parties who had discriminated against him. (ECF 9 at 2–3.) Agiwal also had not alleged an employment relationship (or an attempt to create an

employment relationship) with Unum or alleged that Unum discriminated against him, but the Court declined to dismiss Unum at that stage of the litigation. (Id. at 2 n.1.) HSBC, Agiwal's former employer, remained in the action. HSBC answered Agiwal's complaint on February 25, 2010. On March 8, Judge Bloom set an initial conference for April 6.

On March 9, Unum served a motion to dismiss. In that motion, Unum argued that Agiwal's Title VII, ADA, and ADEA claims all failed because Unum never employed Agiwal and thus could not be liable for employment discrimination. (Unum M.D. at 3–4.) Unum argued alternatively that Agiwal's employment discrimination claims failed because he named only HSBC as a discriminating party in his administrative complaint to the EEOC. Agiwal thus had not exhausted his administrative remedies with respect to Unum. (Id. at 5.) Unum also argued, again in the alternative, that Agiwal had failed to state a plausible claim of employment discrimination because he had "not remotely suggest[ed] that Unum violated Title VII, the ADEA, or the ADA—or that Unum did anything improper or discriminatory." (Id. at 6.) Finally, Unum observed that although Agiwal, in the amended complaint, only specifically asserted claims under Title VII, the ADA, and the ADEA, he did mention the FMLA when describing the facts of his case. (Id. at 8.) Unum said that if Agiwal was asserting a FMLA claim, he could not prevail on that claim because the pleadings did not suggest that Unum violated the FMLA and, alternatively, Unum could not have terminated Agiwal in violation of the FMLA because it was not his employer. (Id. at 9–10.)

On March 29, Agiwal wrote Judge Bloom to request 90 additional days to respond to Unum's motion to dismiss. He said that he needed time to perform legal research. (ECF 25.) Two days later, HSBC and Unum, which are represented by the same counsel, asked Judge Bloom to adjourn the April 6 initial conference to accommodate a planned vacation. Counsel

stated that he had attempted to secure Agiwal's consent to the adjournment but that Agiwal refused to consent. (ECF 26.) Judge Bloom adjourned the conference to April 8. On April 2, Agiwal wrote Judge Bloom and asked that she adjourn the initial conference for 120 days. He said that he needed 120 days because he was gathering "supported documents," preparing a second amended complaint that would add a new defendant, performing legal research to support the amendment, preparing a motion requesting reconsideration of the December dismissal of several defendants, searching for counsel to handle his case, and preparing a reply to HSBC's answer to his complaint, which was not filed until the date the answer was due. Agiwal also denied that he refused to consent to Unum's earlier request to adjourn the conference. (ECF 28.) On April 5, Judge Bloom adjourned the initial conference to May 5 and permitted Agiwal until May 5 to respond to Unum's motion to dismiss. (ECF 27.)

At the May 5 initial conference, the parties clarified some of the facts underlying this dispute. HSBC informed Judge Bloom that it had terminated Agiwal after he repeatedly failed to turn up for meetings at which HSBC managers wanted to discuss with him his poor performance and then abandoned work and submitted a claim for disability benefits, which he later withdrew, explaining that he wanted to take some time off. (Tr. at 8.) Agiwal denied having any performance issues, said that he took time off, and that HSBC fired him while he was away from work. (Id. at 9–10.) He also later suggested that he was not promoted because he is "not their color." (Id. at 23.) After discussing the possibility of settlement, Judge Bloom informed the parties that she would order them to provide initial disclosures (pursuant to the form she employs in pro se litigation) by June 4 and to attend a second conference on June 21. (Id. at 40.) Judge Bloom also confirmed that Agiwal, who is no stranger to pro se litigation, had been provided a copy of the court's pro se manual, which explains the discovery process. (Id.) Judge Bloom also

4

told Agiwal that she would grant his request for yet more time to file his response to Unum's motion to dismiss and provided him until June 7. (Id. at 36.) She informed him, "That's going to be the final extension." (Id.) In a written order that she provided after the conference, Judge Bloom informed Agiwal that if he did not respond to Unum's motion by that date, she would consider the motion unopposed. (ECF 33.)

On June 7, Agiwal filed a two-page response to Unum's motion to dismiss. (ECF 34.) In his papers, Agiwal stated that Unum moved to dismiss "for the ground that plaintiff did not ask[] for damage amount." He then contended that the amended complaint does ask for damages and that, anyway, he wanted to add a request for $2 million in damages. Agiwal closed by asking the Court to deny Unum's motion and grant his request to add a claim for $2 million in damages.

On June 21, Judge Bloom held the previously scheduled status conference. At the conference, Judge Bloom learned that Agiwal had not provided any of the initial disclosures that were due on June 4. (Tr. at 4.) Judge Bloom reminded Agiwal that when she orders him to do something, including making disclosures, he has no choice but to comply. (Id.) Agiwal said that he had a death in the family and for that reason was unable to make the disclosures. (Id.) Judge Bloom informed Agiwal that he needed to write the court when emergencies were threatening to prevent him from complying with his obligations. (Id. at 6.) She reminded him that he had previously lost a lawsuit for failure to comply with court orders, that he had appealed that loss to the U.S. Court of Appeals for the Second Circuit, that he "created circuit case law about being able to dismiss a case," and that he "should know more than anybody else should know that if you fail to comply with a court order, your case is in danger." (Id.) She then warned him that she would not tolerate any further failure to comply with her orders. (Id.) After the conference, Judge Bloom issued a written order, directing Agiwal to make his initial disclosures by July 7

and, by the same date, to provide HSBC with signed and notarized medical releases because Agiwal's complaint put his health at issue. (ECF 37.) The written order also clearly stated, "Plaintiff is warned that even though he is proceeding pro se, he is obligated to comply with the Court's orders and I will recommend that his case should be dismissed if he fails to comply with this order." (Id. at 1.)

On July 7, Agiwal filed a letter with the Court. In the letter, he asked that Judge Bloom recuse herself, arguing that she was in a "hurry to dispose" of the case and that she was unable to fairly manage an employment discrimination lawsuit. (ECF 38 at 6.) He also asked for an order compelling HSBC to answer questions (which he provided in the letter) about his employment and to provide Agiwal with some documents, including performance reviews and company emails that might mention him. (Id. at 7–10.) Agiwal also stated that he did not believe that he needed to provide medical releases to HSBC and that HSBC could recover any medical records that it wanted from Unum. (Id. at 10–11.) Moreover, Agiwal said that he did not think that he had enough time to prepare for his July 29 deposition, which HSBC had noticed on June 21. (Id. at 11.) Agiwal said that he would not attend the deposition until he had more documents from HSBC. (Id.) Finally, he requested copies of the transcripts from the May 5 and June 21 conferences. (Id. at 12.)

On July 12, HSBC wrote Judge Bloom and requested an order compelling Agiwal to comply with her June 21 order. (ECF 39.) HSBC argued that it could not adequately prepare for Agiwal's July 29 deposition without the disclosures and medical records. On July 14, Agiwal wrote Judge Bloom and said that his July 7 letter complied with the June 21 order and that he was waiting for further instructions from her. (ECF 40.) He again said that he was not prepared

for the July 29 deposition and also informed Judge Bloom that he would require 60 days to respond to HSBC's first set of interrogatories, which HSBC had propounded earlier.

On July 16, Judge Bloom issued a written order. (ECF 41.) She denied Agiwal's request that she recuse herself as unfounded. She then ordered Agiwal to attend his July 29 deposition and to bring with him to the deposition his initial disclosures and signed medical releases. She informed Agiwal that that directive "is a Court Order and plaintiff must obey." (Id. at 3.) Judge Bloom unequivocally warned Agiwal that if he disobeyed her order, she would recommend that the Court dismiss his case: "This is plaintiff's FINAL chance to comply with his discovery obligations." (Id.) And: "**If plaintiff fails to timely appear for his deposition on July 29, 2010, or if he fails to bring the names and addresses of his medical providers, I shall recommend that his case should be dismissed.**" (Id. (emphasis in original).) Judge Bloom also denied Agiwal's request for more time to respond to HSBC's interrogatories and told him that he should send his own discovery requests to HSBC, not the court, as he had done in July 7 filing.

Agiwal did not attend his July 29 deposition. On July 28, he wrote Judge Bloom and informed her that he had spoken with one of HSBC's attorneys and that she had agreed to cancel the deposition. (ECF 44.) He also informed Judge Bloom that he had requested that his deposition be taken in court, not at the offices of HSBC's counsel, where he would not feel comfortable.

HSBC moved to dismiss on July 29. (ECF 45.) HSBC informed Judge Bloom that its counsel had specifically denied Agiwal's request to adjourn his deposition. It further observed that Agiwal had provided no good reason for his failure to attend his deposition. HSBC argued that Agiwal "repeatedly has flouted the Court's Orders and authority, in this case and others, and

has shown no indication that he ever will take the Court's Orders seriously or comply with his obligations under the Federal Rules. Enough is enough." (Id. at 2.) It asked that Judge Bloom recommend dismissing the case, consistent with her earlier order.

On September 2, Judge Bloom recommended that the Court grant HSBC's motion to dismiss under Rule 37(b)(2)(A)(v). (ECF 47.) She observed that Agiwal had failed on three separate occasions to make initial disclosures and provide his medical releases, "despite being warned each time that failure to comply would result in dismissal." (Id. at 3.) She observed further that Agiwal had failed to appear for his deposition, again despite a warning that failure to attend would result in dismissal. (Id.) Judge Bloom found dismissal an appropriate sanction because Agiwal had willfully refused to comply with court orders, had not complied with his discovery obligations for four months, had been offered opportunities to cure his disobedience, and was fully aware that failure to comply with her orders could result in dismissal.

After the Court granted him a 10 day extension, Agiwal objected to the report and recommendation on September 30. (ECF 49.) He again suggested that he did not need to provide HSBC with medical releases because Unum, which contracted with HSBC, had his records and HSBC could get the records from it. (Id. at 4–5.) And he again stated that HSBC's counsel had agreed to reschedule his deposition. (Id. at 5.) Agiwall also suggested that Judge Bloom, who was familiar with his litigation history and had previously dismissed one of his suits for failure to obey her orders, had taken "revenge" because Agiwal had appealed that dismissal to the U.S. Court of Appeals for the Second Circuit. (Id. at 6.) Agiwal contended too that Judge Bloom had "used [his] weakness [to] push hard to finalize everything in [a] very very short period." (Id. at 7.) He also provided excerpts of the trial transcript that he said show Judge Bloom favoring defense counsel and generally argued that Judge Bloom was hostile to his case

from the outset. (Id. at 7–10.) Agiwal closed by asking the Court to remove Judge Bloom from his case, reject her recommendation, grant him 45 days to provide the Court with more information, let the case proceed to trial, and "decide[] what is the best for justice." (Id. at 11–12.) HSBC responded to Agiwal's objections and urged that he had provided no good reason for his failure to comply with Judge Bloom's orders. It asked the Court to accept Judge Bloom's recommendation. (ECF 50.) For the reasons set forth below, the Court grants both motions to dismiss.

## DISCUSSION

**Unum's Motion to Dismiss**

Unum has moved to dismiss on the grounds that it cannot be liable under Title VII, the ADA, or the ADEA because it did not employ Agiwal. Moreover, it contends that the amended complaint does not allege that Unum discriminated against Agiwal in any way and that Agiwal has not exhausted his administrative remedies with respect to Unum. Unum also contends that if the Court reads the complaint to allege claims under the FMLA, those claims fail. Agiwal's two-page response to Unum's motion does not address any of these arguments and simply asks the Court to deny the motion. Agiwal's failure to meaningfully oppose the motion does not itself entitle Unum to a judgment of dismissal. McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000) ("If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal."). Nevertheless, the Court grants Unum's motion on the merits.

The amended complaint fails to state a claim against Unum. With respect to the Title VII and ADEA allegations, Unum cannot be liable to Agiwal because he does not refute its claim that it never maintained any sort of employment relationship with him. York v. Ass'n of the Bar

of the City of New York, 286 F.3d 122 (2d Cir. 2002) (volunteer cannot sue organization for which she volunteers under Title VII because no employment relationship); Baba v. Japan Travel Bureau Int'l, Inc., 111 F.3d 2, 6 (2d Cir. 1997) (no Title VII claim against EEOC); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 509 (2d Cir. 1994) (no ADEA claim because plaintiff was not an employee of defendant); Baba v. Warren Mgmt. Consultants, Inc., 882 F. Supp. 339, 342 (S.D.N.Y. 1995) (no Title VII claim absent employment relationship between defendant and plaintiff). Because the ADA, like Title VII, only creates liability for employers (and other entities not relevant here), Agiwal also fails to state a claim against Unum under that act. Heller v. Consol. Rail Corp., 331 F. App'x 766, 768 (2d Cir. 2009); cf. Spiegel v. Schulmann, 604 F.3d 72, 79–80 (2d Cir. 2010) (relying on remedial provisions of Title VII, which the ADA incorporates, to hold that anti-retaliation provision of ADA does not create liability for individuals). Even if Unum could, in theory, be liable to Agiwal, the amended complaint pleads no facts supporting liability. Charitably construed, the amended complaint alleges that HSBC subjected Agiwal to a discriminatory workplace, failed to promote him, and fired him because of his race, religion, age, or disability while he was on covered leave. The amended complaint nowhere suggests that Unum contributed to any discriminatory workplace or illegal termination.

The Court also does not believe that Agiwal has pleaded a claim under the FMLA. As an initial matter, the complaint does not obviously purport to assert a claim under the FMLA; it only mentions the FMLA in the course of explaining why Agiwal's termination violated several other federal statutes. But even if the amended complaint did attempt to allege a claim under the FMLA (e.g. retaliatory discharge), the complaint does not plead that Unum did anything to violate that act. Unum is entitled to a judgment of dismissal on all of the claims that the

amended complaint obviously attempts to plead, and any claims that it might be read to attempt to plead.

Finally, the Court denies Agiwal leave to replead. Agiwal has done little to help the Court understand the theory on which he hopes to hold Unum liable for his termination or any other mistreatment he endured while employed at HSBC. The Court's independent review of the record reveals no plausible basis for holding Unum liable to Agiwal. Leave to replead would thus be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

**HSBC's Motion to Dismiss**

HSBC urges the Court to adopt Judge Bloom's report and recommendation. It says that Agiwal repeatedly refused to obey Judge Bloom's orders, knew that dismissal could result from such disobedience, and has offered no compelling reason to excuse his behavior. Agiwal disputes the necessity of complying with the order to provide medical releases, says that he needed more time to comply with the other discovery orders, denies that he skipped a scheduled deposition, and accuses Judge Bloom of moving too quickly and treating him unfairly. The Court adopts the report and recommendation.

"All litigants, including pro ses, have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks, brackets, and citation omitted). Court orders requiring compliance include discovery orders, which in turn include orders to attend a noticed deposition. Id.; see also Valentine v. Museum of Modern Art, 29 F.3d 47 (2d Cir. 1994) (affirming dismissal for failure to attend deposition); Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759 (2d Cir. 1990) (same); Davidson v. Dean, 204 F.R.D. 251 (S.D.N.Y. 2001) (dismissal for failure to disclose medical records). The decision to dismiss

a pro se litigant's suit for failure to comply with court orders is committed to the sound discretion of the district courts. Agiwal, 555 F.3d at 302. In determining the propriety of dismissal for failure to comply with court orders, "[s]everal factors may be useful" guides: "(1) the willfulness of the non-compliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." Id. (internal quotation marks omitted) (ellipsis in original).

All four of these considerations counsel dismissal. First, Agiwal's conduct was surely willful and unjustified. "Noncompliance with discovery orders is considered willful when the court's orders are clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." Davidson, 204 F.R.D. at 255 (internal quotation marks omitted). Judge Bloom's discovery orders were perfectly clear. She took great pains to ensure that Agiwal understood them, and the Court has no trouble finding that Agiwal in fact understood them, especially because of his prior litigation experience, which centered on the discovery obligations of pro se litigants. Agiwal also has not offered a good excuse for his conduct. His belief, even if well founded, that Unum could easily provide his medical records to HSBC does not justify his refusal to execute medical releases; he had an obligation to obey Judge Bloom's order, even if he thought the order unwise and compliance a waste of his time. Bobal, 916 F.2d at 765; Davidson, 204 F.R.D. at 256 ("[A]fter the court's Orders directing execution of the releases, plaintiff was obligated to exercise all reasonable diligence to comply with the Orders; whether [the record-holders] would accept the releases or not is irrelevant to plaintiff's obligation to comply with the Orders."). With respect to Agiwal's refusal to provide initial disclosures, his contention that he needed more time is not compelling.

Many of the disclosures required Agiwal to do no more than state basic facts about his claims of discrimination. Agiwal should have been able to explain the facts (if not legal theories) supporting recovery some eight months after he filed his lawsuit. He did not even try. Moreover, Agiwal's written submissions to the Court belie his contention that his unfamiliarity with written English rendered compliance with his discovery obligations unusually difficult for him. Cf. Agiwal, 555 F.3d at 303 ("[Agiwal's] appearance before our Court demonstrated an adequate command of spoken English.").

Although Judge Bloom did not specifically rely upon it in recommending dismissal, Agiwal's conduct with respect to his July 29 deposition also supports dismissal. It appears that Agiwal unilaterally decided to cancel the July 29 deposition without receiving the permission of the Court or HSBC. His claim that an HSBC attorney agreed to adjourn the deposition is suspect for several reasons. As an initial matter, HSBC denies that it agreed to any adjournment. Certain facts logically support HSBC's claim. Those include Agiwal's earlier complaint that he was not ready for the deposition on July 29 and the unlikelihood in view of the prior recalcitrant behavior of Agiwal that HSBC would have agreed to an open-ended adjournment as Agiwal claimed. Even if Agiwal mistakenly believed that he had secured an agreement to adjourn the deposition, the Court faults Agiwal for waiting until the deposition date was nearly upon him before contacting HSBC and Judge Bloom. Had Agiwal contacted HSBC or Judge Bloom sooner, the misunderstanding, assuming there was one, might have been avoided. Nothing suggests a reason for such late notice, much less a reason "beyond the party's control."

The Court turns to the second consideration, i.e. whether a lesser sanction would be effective. This is not a case where lesser sanctions such as striking a single claim or monetary penalties would be effective. Striking one of Agiwal's claims in response to his claim-specific

conduct—e.g. his ADA claim because he has failed to sign the medical releases—does not seem an effective sanction because Agiwal has never clearly explained his theory of the case, despite the fact that Judge Bloom asked him more than once to do so. Thus, the Court might strike a claim that was never really in the case. Moreover, Agiwal's wrongful refusal to attend his deposition and to provide initial disclosures pertains to all of his claims, so striking the ADA claim is a sanction that "would be substantially narrower than plaintiff's misconduct." Davidson, 204 F.R.D. at 256. Finally, Agiwal is proceeding pro se and in forma pauperis, "[t]hus a financial sanction would be uncollectible and is, therefore, meaningless in this case." Id. As Judge Bloom rightly concluded, dismissal is the only adequate sanction for Agiwal's conduct.

Addressing the third consideration, the Court notes that Agiwal has not engaged in a single act of noncompliance; his defiant behavior has spanned at least three months. Agiwal ignored discovery orders relating to his claims against HSBC at least from May 5 until July 29. And he continues to ignore the discovery orders, which remain in force, today. When Agiwal wrote the Court in September, he in no way suggested that he was interested in promptly complying with any orders, old or new. Agiwal has amply demonstrated his unwillingness to prosecute this lawsuit, which he filed more than one year ago, and providing him an opportunity to continue his noncompliance is not a good use of the Court's time or his.

Fourth, Agiwal had ample warning that his failure to comply with Judge Bloom's orders would result in dismissal of his action. Judge Bloom warned him at pre-trial hearings more than once, ensured that Agiwal understood her, and then provided him with transcripts of those pre-trial hearings in mid July. She also warned him by written order more than once. Judge Bloom's final order, which she issued after repeatedly forgiving Agiwal's unjustified refusal to comply

with her orders, could not have been clearer. Moreover, Agiwal, as Judge Bloom observed, argued an appeal in the U.S. Court of Appeals for the Second Circuit about a similar issue and obviously understands, perhaps better than some lawyers and certainly better than most pro se litigants, the consequences of refusing to participate in pre-trial discovery. See id. at 257 (repeat pro se litigant was acutely aware of consequences of ignoring orders).

Finally, the record does not support Agiwal's claim that Judge Bloom was hostile to him or his discrimination claims. Judge Bloom permitted Agiwal multiple opportunities to begin participating in the discovery process and recommended dismissal only after Agiwal made clear that he was only interested in requesting more time so that he could, apparently, request more time. Agiwal's contrary view of Judge Bloom's handling of his case appears to stem from his view that the American civil litigation system, especially as he has experienced it, is obsessed with the efficient resolution of lawsuits without regard to their merit. (E.g., ECF 49 at 5.) But Judge Bloom did not recommend, and this Court is not, dismissing Agiwal's action against HSBC because, for example, his pleadings are inadequate or otherwise technically deficient. Instead, Agiwal is forfeiting his action because he refused to participate in one of the central truth-promoting components of the American system—discovery. See In re Six Grand Jury Witnesses, 979 F.2d 939, 941 (2d Cir. 1992) ("Discovery, designed to advance the pursuit of truth, takes the 'sporting' element out of litigation by eliminating surprise."). The Court sympathizes with Agiwal's desire to resolve his case on the merits, but cannot condone his refusal to facilitate that merits resolution.

In sum, Agiwal has offered no reason for his failure to comply with Judge Bloom's orders. He clearly knew that he was courting dismissal by his conduct. His suit against HSBC is dismissed with prejudice.

## CONCLUSION

The defendants' motions are granted. Agiwal's claims against Unum and HSBC are dismissed with prejudice. The Clerk of the Court is directed to enter judgment for the defendants and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
November 4, 2010

s/Carol Bagley Amon
_____
Hon. Carol B. Amon
United States District Judge